UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

BUFFALO BILLS, LLC,

   Plaintiff,

 v.

VINCENT CACCAMO, STEPHANIE
CACCAMO, & APS SOLUTIONS, INC.,

   Defendants.

20-CV-00023-LJV
DECISION & ORDER

---

  On January 8, 2020, the plaintiff, Buffalo Bills, LLC ("the Bills"), commenced this action under N.Y. Debt. & Cred. L. §§ 273, 276, alleging that an entity known as Arenas, Parks & Stadiums Solutions, Inc. ("Arenas, Parks & Stadiums"), fraudulently conveyed assets to the defendants to prevent collection of a state court judgment.  Docket Item 1.  The Bills asserted diversity jurisdiction under 28 U.S.C. § 1332(a)(1).  *Id.*  On May 25, 2020, the Bills asked the Clerk of Court to enter a default against two of the defendants, Vincent and Stephanie Caccamo ("the Caccamos"),is because they had failed to answer the complaint.  Docket Item 5.  The Clerk of Court granted that request the next day.  Docket Item 6.  On June 10, 2020, the Bills asked the Clerk of Court to enter a default judgment for a sum certain against the Caccamos.  Docket Item 8.  On June 22, 2020, the Caccamos responded in opposition and moved to set aside the entry of default.  Docket Item 9; *see also* Docket Item 11.  The Bills responded to that motion on June 26, 2020.  Docket Item 10.

  For the reasons that follow, the Court grants the Caccamos' motion and denies the Bills' motion as moot.

## **BACKGROUND**

The following facts are taken from the complaint and accepted as true for purposes of this motion.  *See Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004) ("[A] default is an admission of all well-pleaded allegations against the defaulting party.").

In April 2017, the Bills entered into a sponsorship agreement with Arenas, Parks & Stadiums.  Docket Item 1-1 at 1.  The Bills fulfilled their obligations under the contract, but Arenas, Parks & Stadiums failed to remit payment as required.  *Id.* at 2.

On February 7, 2019, the Bills obtained a default judgment against Arenas, Parks & Stadiums in New York Supreme Court, Erie County.  Docket Item 1-1 at 19-20.  On February 19, 2019, the court clerk signed a statement of judgment in the amount of $491,671.56.  *Id.* at 22.  But when the Bills attempted to collect on that judgment by serving a restraining order on a bank account owned by Arenas, Parks & Stadiums, the bank notified the Bills that the account had been emptied.  *Id.* at 24.

The Bills subpoenaed defendant Stephanie Caccamo, CEO of Arenas, Parks & Stadiums, for a judgment debtor examination; likewise, it subpoenaed Vincent Caccamo, the individual "responsible for the management and operation" of Arenas, Parks & Stadiums.  Docket Item 1 at 4.  Neither individual appeared.  *Id.*  The Caccamos "are now conducting business via [d]efendant APS Solutions, Inc., contracting services for carpentry, flooring, painting[,] and maintenance, performing the same services for the same clientele as the previously had as 'Arenas, Parks & Stadiums Solutions, Inc.,'" and "the creation of [d]efendant APS Solutions, Inc.[,] was part of a scheme implemented by [the Caccamos] to defraud creditors."  *Id.* at 5.

The Bills commenced this action in January 2020, alleging that APS Solutions, Inc. ("APS"), is both "the business alter ego of [the Caccamos]" and "the successor in interest of Arenas, Parks & Stadiums Solutions, Inc."  *Id.* at 1-2.  The Bills assert that diversity jurisdiction exists under 28 U.S.C. § 1332(a)(1) because it is organized under the laws of Delaware and maintains its principal place of business in New York, whereas the Caccamos are residents of Connecticut and APS maintains its principal place of business in Maryland.  *Id.*

On February 5, 2020, the Bills filed two affidavits of service.  *See* Docket Item 3 and 4.  In those affidavits, the Bills asserted that it personally served "Alice Caccamo, Co-Tenant" of the defendant Caccamos, on January 18, 2020, at a certain address in Connecticut, and that it also mailed a copy of the papers to the same address.  *Id.*  On May 26, 2020, the Clerk of Court entered a default against the Caccamos, who had failed to respond.  Docket Item 6.  On June 10, 2020, the Bills asked the Clerk of Court to enter a default judgment against the Caccamos in the total amount of $550,505.64, which included the state court judgment, interest, and costs.  Docket Item 8-1 at 2.

That same day, attorney Paul G. Joyce entered a notice of appearance on behalf of the Caccamos.  Docket Item 7.  On June 22, 2020, the Caccamos moved to set aside the entry of default.  Docket Item 9.  The Caccamos declared that they "believed that the matter was stayed due to the COVID[-19] pandemic"; that "upon receiving the notice that default was entered[,] [they] contacted counsel"; and that they "ha[d] never owned or operated a company named APS Solutions, Inc."  Docket Item 9-1 at 2.  They do not dispute the plaintiff's assertion of timely service.  *See id.*

3

**DISCUSSION**

A "court may set aside an entry of default for good cause." Fed. R. Civ. P. 55(c). In assessing the existence of good cause, courts consider three factors: "(1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993) (citations omitted). "The dispositions of motions for . . . relief from [entries of defaults] are left to the sound discretion of a district court." *Id.* at 95. But as a rule, "defaults are generally disfavored and are reserved for rare occasions." *Id.* at 96. *Cf. New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005) (characterizing a default judgment as "the most severe sanction which [a] court may apply" and explaining that although "[a] motion to vacate a default judgment is addressed to the sound discretion of the district court, . . . [the Second Circuit] ha[s] expressed a strong preference for resolving disputes on the merits" (citations omitted)).

With respect to the first factor, willfulness encompasses "conduct that is more than merely negligent or careless." *S.E.C. v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998) (citation omitted). A determination of willfulness is appropriate "where the conduct of counsel or the litigant was egregious and was not satisfactorily explained." *Id.* So a court may refuse to set aside a default "where the moving party has made a strategic decision to ignore the litigation." *Nikolaeva v. Home Attendant Servs. of Hyde Park*, No. 15-CV-6977, 2018 WL 6984837, at *2 (E.D.N.Y. Nov. 16, 2018) (*citing American All. Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996)), *R&R adopted by* 2019 WL 147721 (Jan. 9, 2019).

With respect to the second factor, "delay alone is not a sufficient basis for establishing prejudice." *Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983).  Instead, the delay must have caused the loss of evidence, created increased difficulties in discovery, or provided increased opportunity for fraud and collusion.  *Id.*

Finally, with respect to a meritorious defense, "the defendant need not establish his defense conclusively, but he must present evidence of facts that, 'if proven at trial, would constitute a complete defense.'"  *McNulty*, 137 F.3d at 740 (quoting *Enron*, 713 F.2d at 98) (additional citation omitted).

Considering these factors, the Court will set aside the entry of default and allow the defendants to litigate this action on its merits.  The Court agrees with the Bills that the Caccamos' explanation as to why they did not respond to the complaint—that they believed the courts were closed during the COVID-19 pandemic—defies logic.  Even if the Caccamos, as laypersons, might not have known that the federal courts remained open despite state-court closures, they do not dispute that they were served with the papers on January 18, 2020.  The Caccamos therefore concede that their answer was due on February 10, 2020—more than a month before New York courts were limited to essential matters on March 22, 2020, *see* Docket Item 10-5[1].  But the Court does not find that this inadequate explanation outweighs the other two factors, both of which support setting aside the entry of default.  First, the delay does not appear to have

---

[1] Similarly, New York State Governor Andrew Cuomo did not declare a state of emergency until March 7, 2020, and he did not issue his first closure orders until March 16, 2020.  *See* N.Y. Exec. Order No. 202 (Mar. 7, 2020), https://www.governor.ny.gov/sites/governor.ny.gov/files/atoms/files/EO_202.pdf; N.Y. Exec. Order No. 202.3 (Mar. 16, 2020), https://www.governor.ny.gov/sites/governor.ny.gov/files/atoms/files/EO_202.3.pdf.

prejudiced the Bills; there is no allegation of lost evidence or of further fraudulent conveyances, for example. Even more importantly, there appear to be meritorious defenses to the action.

The Court is concerned, in particular, that the Bills have not adequately established factual predicates for this Court's exercise of subject matter jurisdiction. The Bills allege that the Caccamos fraudulently conveyed certain assets of Arenas, Parks & Stadiums to APS, and that because the Caccamos are an "alter ago" of APS, the Bills should be permitted to pierce APS's corporate veil and recover from the Caccamos directly. Docket Item 1 at 7-9. Underpinning these allegations are two asserted facts of jurisdictional significance: (1) that Arenas, Parks & Stadiums, whose New York residency the Bills concede, is not a "required" and "indispensable" party to this action under Rule 19 of the Federal Rules of Civil Procedure[2]; and (2) that APS is not a New York resident.

---

[2] N.Y. Debt. & Cred. L. §§ 273 and 276 "define different types of conveyances by a debtor that become recoverable by creditors because the conveyances' fraudulent nature. These conveyances fall into two distinct categories: constructively fraudulence conveyances, such as [section 273], and actually fraudulent conveyances, as defined by [section 276]." *See Kim v. Ji Sung Yoo*, 311 F. Supp. 3d 598, 610 (S.D.N.Y. 2018) (citing *Drenis v. Haligiannis*, 452 F. Supp. 2d 418, 428-29 (S.D.N.Y. 2006)), *aff'd sub nom. Tae H. Kim v. Ji Sung Yoo*, 776 F. App'x 16 (2d Cir. 2019) (summary order). "Under New York law, a creditor may recover money damages against parties who participate in the fraudulent transfer and are either transferees of the assets or beneficiaries of the conveyance." *Id.* at 613 (quoting *Cadle Co. v. Newhouse*, 74 F. App'x 152, 153 (2d Cir. 2003)). "There is a conflict of authority as to whether the debtor who has retained no legal interest in the property conveyed is a necessary party defendant to an action to set aside a fraudulent conveyance." *See generally* W.J. Dunn, *Necessary Parties Defendant To Action To Set Aside Conveyance In Fraud Of Cr editors,* 24 A.L.R.2d 395 §§ 2-3 (1952) (citing New York cases as supporting view that "the debtor, as the originator of the fraudulent conduct complained of, is a necessary part to an action to set aside a fraudulent conveyance, even though there is nothing to indicate that he has retained any interest in the property conveyed."). *Cf. U.S. v. Mazzeo,* No. 98-CV-3060, 2001 WL 393671, at *5 (E.D.N.Y. Jan.10, 2001) ("[The]

Although the Caccamos have not contested APS's residency and have only obliquely raised the issue of whether Arenas, Parks & Stadiums, as the debtor, is an indispensable party to this action, *see* Docket Item 9 at 2; Docket Item 9-2 at 2, the Court nevertheless is obliged to address those issues independently.  *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) ("[S]ubject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived.  Moreover, courts . . . have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." (citations omitted)); *MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 382-83 (2d Cir. 2006) ("Because Rule 19 protects the rights of an absentee party, . . . trial courts . . . may consider this issue *sua sponte* even if it is not raised by the parties to the action." (citations omitted)).

In reaching this decision, this Court has carefully considered the plaintiff's submissions casting doubt on the Caccamos' assertions that they do not own APS. *See, e.g.*, Docket Item 10-1 (screenshot of LinkedIn page for "APS Solutions Inc. – Arenas, Parks, Stadiums," listing "Vincent Caccamo" as "Founder/President").  But even if these submissions undermine the Caccamos' defense that the Bills should not be permitted to pierce the corporate veil,[3] they do not answer the question of whether Arenas, Parks & Stadiums is an indispensable party to this action and therefore do not address the fundamental question of whether this Court has the power, in the first

---

necessary parties to a fraudulent conveyance action are the transferee and any other party who may claim an interest in the property conveyed." (citation omitted)).

[3] *Cf. ABN AMRO Bank, N.V. v. MBIA Inc.,* 17 N.Y.3d 208, 235 (2011) ("Those seeking to pierce a corporate veil . . .  bear a heavy burden."  (quoting *TNS Holdings v. MKI Sec. Corp.,* 92 N.Y.2d 335, 339 (1998))).

instance, to decide this matter. What is more, that same LinkedIn page lists the location of APS—the already-joined defendant corporation—as Wingdale, New York. *See id.*; *see also* Docket Item 10-4 (Dun & Bradsheet business credit report also listing "APS Solutions, Inc." as located in Wingdale, NY). So even if Arenas, Parks & Stadiums is not an indispensable party, there still may not be complete diversity among the remaining parties. *See St. Paul Fire and Marine Ins. Co. v. Universal Builders Supply,* 409 F.3d 73, 80 (2d Cir.2005) ("Diversity is not complete if any plaintiff is a citizen of the same state as any defendant.") (citation omitted)); *Washington Nat'l Ins. Co. v. OBEX Grp. LLC*, 958 F.3d 126, 133 (2d Cir. 2020) ("[A] corporation is a citizen of the state in which it has its principal place of business and every state in which it has been incorporated." (citing 28 U.S.C. § 1332(c)(1))).[4] And under the circumstances here, the specter of incomplete diversity suffices to demand further inquiry. *See also Enron*, 713 F.2d at 96 ("[W]hen doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party. In other words, 'good cause' . . . should be construed generously.").

---

[4] This factor also tips the balance of equities in the Caccamos' favor. Even if the Caccamos' default approached a degree of willfulness, the Bills chose to bring this state-law action in federal court, rather than in state court where jurisdiction would be undisputed. Having made that strategic choice, the Bills must carry the attendant burden of "proving by a preponderance of the evidence that [subject-matter jurisdiction] exists." *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citation omitted).

**ORDER**

In light of the above, IT IS HEREBY

ORDERED that the Caccamos' motion to set aside the clerk's entry of default, Docket Item 9, is GRANTED; and it is further

ORDERED that the plaintiff's motion for default judgment, Docket Item 8, is DENIED as moot; and it is further

ORDERED that the parties shall file and serve supplement briefing on the issue of this Court's subject matter jurisdiction. The Bills shall file a memorandum of law by September 8, 2020; the Caccamos shall respond by September 22, 2020; and the Bills shall reply by September 29, 2020. The Court will schedule oral argument at a later date if necessary; and it is further

ORDERED that the Bills may move this Court to conduct limited discovery on the question of jurisdiction and to amend the briefing schedule accordingly.

SO ORDERED.

Dated: August 24, 2020
       Buffalo, New York

                                    /s/ Hon. Lawrence J. Vilardo
                                    LAWRENCE J. VILARDO
                                    UNITED STATES DISTRICT JUDGE